## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 10-21537-Civ-COOKE/BANDSTRA

VIVANT PHARMACEUTICALS, LLC,

      Plaintiff

vs.

CLINICAL FORMULA, LLC, *et al.*,

      Defendants.

_____/

### ORDER GRANTING MOTION TO TRANSFER VENUE

THIS MATTER is before me on Defendant JMC Laboratories, Inc.'s, d/b/a Care Plus Skincare ("CarePlus") and Defendant Michael Molina's (collectively the "CarePlus Defendants") Motion to Transfer Venue. (ECF No. 20). I have reviewed the record, the arguments and the relevant legal authorities. For the reasons discussed below, the CarePlus Defendants' Motion to Transfer Venue is granted.

### BACKGROUND

Plaintiff Vivant Pharmaceuticals, LLC ("Vivant"), a Florida corporation, is the exclusive owner and distributor certain healthcare and skincare products and formulas. Several of Vivant's products incorporate a patented formula that is the subject of U.S. Patent No. 6,169,110 (the '110 Patent), entitled "Rejuvenating the Skin Using a Combination of Vitamin A and Alphahydoxy Acids," issued by the United States Patent And Trademark Office on January 2, 2001. Vivant's products also incorporate secreted formulas and formulations that constitute proprietary,

confidential and legally protectable trade secret information. Vivant also owns registered and unregistered trademarks that are associated Vivant products.[1]

Defendant Clinical Formula LLC, ("Clinical Formula"), is a California corporation that manufactures, sells and distributes a variety of skincare products throughout the United States. Defendant Ken Kutanakit, a California resident, is Clinical Formula's corporate manager and president.  Defendants Erwin Demingoy and Rowena Demingoy (the "Demingoys") are Clinical Formula employees and are also California residents (Clinical Formula, Ken Kutanakit and the Demingoys are collectively referred to as the "Clinical Formula Defendants").  CarePlus is a California corporation that sells and distributes skincare products throughout the United States. Defendant Michael Molina is the sole owner and president of CarePlus.

Clinical Formula has manufactured skincare products for Vivant since 1992.  Vivant's patented formulas and trade secrets were licensed and disclosed to Clinical Formula subject to certain restrictions contained within executed licensing and confidentiality agreements.  Clinical Formula also supplies skincare products to CarePlus. The crux of Vivant's cause of action is premised on the allegation that the Clinical Formula Defendants and the CarePlus Defendants conspired to sell patent infringing, trademark infringing and trade secret misappropriated products in the Southern District of Florida.

DISCUSSION

Vivant's Amended Complaint alleges various causes of action for patent infringement, federal and common law trademark infringement, federal and common law unfair competition, misappropriation of trade secrets, breach of contract, breach of fiduciary duty, tortuous

---

[1] The federally registered marks are VIVANT (Reg. No. 1,763,916), DERM-A-GEL (Reg. No. 2,662,390) and PROPEEL (Reg. No. 3,062,483).  The unregistered marks include Exfol-A-Forte, Algae Soft Mask, Rejuv Rx, Progressive ProPeel, Mandelic Acid 3-in-1 Toner, and Green Tea Cleansing Gel.

2

interference, conversion, fraudulent concealment, false designation, unjust enrichment, and deceptive and unfair practices. Vivant claims that venue is proper in the Southern District of Florida because this Court has general jurisdiction over the CarePlus Defendants and specific jurisdiction over the Clinical Formula Defendants. Notwithstanding the substantive challenges to the viability of Vivant's allegations, the CarePlus Defendants argue that this Court lacks jurisdiction and that the Central District of California is the proper forum for Vivant's claims.

Venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed. Cir. 1990). A plaintiff bears the burden of establishing proper venue. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1269 (S.D. Fla. 2004). Where a complaint contains multiple claims, venue must be established for each individual claim and each defendant. *See Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed. Cir. 1996)). Where venue is proper for one claim, however, and all claims arise out of a common nucleus of operative facts, venue may be proper for the entire proceeding under the theory of pendent venue. *See Rodriguez v. Chandler*, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986) (pendent venue may be exercised when the claims are factually interrelated), *aff'd* 841 F.2d 1117 (2d Cir. 1988).

The decision to exercise pendent venue is a matter of judicial discretion that only follows the court's consideration of factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants. *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000). Courts generally employ one of two approaches when exercising pendent venue. The first approach requires a case to be

brought in a venue that satisfies a specific venue statute, if applicable.  *Id.*  The second approach requires a court to determine which claim is the primary claim and apply the venue statute applicable to that claim.  *Id.* at 462-63.  For purposes of the venue analysis here, this Court adopts the "primary claim" approach.[2]

Of the sixteen claims asserted in the Amended Complaint, at least eleven claims concern the unauthorized use of Vivant's patents and trademarks.  Clearly, Vivant's patent and trademark infringement claims are the "primary claims" relevant to the venue analysis.  Therefore, this Court must determine whether it may exercise jurisdiction over those claims in accordance with the applicable venue statutes.[3]

**A.  Whether Venue is Proper Under 28 U.S.C. § 1400(b).**

In patent infringement cases, venue is proper "where the defendant resides or where the defendant committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  For a corporate defendant, the reach of § 1400(b) is co-extensive with the personal jurisdictional requirements of 28 U.S.C. § 1391(c).  Thus, a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  Federal Circuit law governs personal jurisdiction in patent

---

[2] The method used to analyze pendent venue claims is a matter of first impression in this jurisdiction.  In this case, pendent venue in inappropriate under the first approach because it requires the Court to apply a specific venue provision for one claim to determine whether venue is proper for the remaining sixteen claims. Where an action of involves multiple claims and defendants, and where the venue analysis for each claim differs due to various factual or legal circumstances, the primary claim approach allows for the identification of the principal causes of action to ensure that venue is proper for all defendants.

[3] Vivant argues that "personal jurisdiction is not presently disputed" because the Court denied the CarePlus Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction.  This statement is not only disingenuous but is a gross misstatement of the procedural history of this case.  The CarePlus Defendants' Motion to Dismiss was denied as moot after Vivant filed its Amended Complaint.  I can only conclude that Vivant's argument in favor of personal jurisdiction was made either negligently or with the intent to mislead the Court.

4

infringement actions. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).   Under Federal Circuit law, the assertion of jurisdiction over a corporate defendant is proper if it is appropriate under the state's long-arm statute and does not violate the Due Process Clause of the Fourteenth Amendment. *See id.* at 1349.

Florida's long-arm statute authorizes the exercise of jurisdiction over a cause of action arising out of "[o]perating, conducting, engaging in, or carrying on a business or business venture" in Florida.   Fla. Stat. § 48.193(1)(a)(2010).   Florida's long-arm statute also "provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortuous act in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing Fla. Stat. § 48.193(1)(b)).   A corporate defendant's physical presence is not required for jurisdiction to attach, so long as the "out-of-state defendant commits a tort that produces an injury in Florida." *Id.*

Even if a corporate defendant falls within the purview of Florida's long-arm statute, personal jurisdiction cannot be exercised over a defendant who does not have sufficient "minimum contacts" with Florida, such that the maintenance of the suit offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 316 (1945); *see also Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.,* 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 474 (1985)).   Under the "minimum contacts" test, a corporate defendant may be subject to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). "[I]n the absence of an evidentiary hearing, a plaintiff need only make a *prima facie* showing that defendants are subject to personal jurisdiction." *Coyle*, 340 F.3d at 1349 (Fed. Cir. 2003)

(citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). A defendant "should reasonably anticipate being haled" into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### a. Jurisdiction Over CarePlus Defendants

Vivant argues that venue in the Southern District of Florida is proper because the Court has general jurisdiction over CarePlus and Michael Molina. General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *see also Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006). "Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.' Instead, a court must look at the facts of each case to make such a determination." *LSI Indus., Inc.*, 232 F.3d at 1375.

Vivant contends that general jurisdiction is appropriate because CarePlus maintains an interactive website (the "CarePlus Website") that is accessible to Florida residents, has sold infringing products to Florida Residents and has attended three conventions in Miami, Florida. The CarePlus Website is not directed at customers in Florida but is instead available throughout the country to everyone who has access to the Internet. Although the availability and use of a "highly interactive, transaction-oriented website" may give rise to personal jurisdiction, it is unclear how frequently Florida residents have actually used the CarePlus Website to purchase the alleged infringing products. *See Trintect Indus. Inc.*, 395 F.3d at 1281 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997). Mere access to the CarePlus Website "does not by itself show any persistent course of conduct" that warrants the

exercise of personal jurisdiction.  *See Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005); *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008).

Vivant also contends that infringing products have been sold to at least two Florida residents.  The only evidence that Vivant proffers, however, is an Internet printout of customer "testimonials" related to CarePlus products.  Customers from Arizona, Virginia, California, Texas, Massachusetts, North Carolina and Florida posted comments regarding CarePlus products.  The Florida resident's comments, however, do not indicate whether the products purchased were the products at issue in this case.  Vivant also claims that CarePlus sold products to a Florida resident and gave her a catalog of CarePlus products while attending a conference in Las Vegas, NV.  Based on this evidence alone, even while drawing all inferences in Vivant's favor, the Court cannot conclude that any infringing sales occurred in this district.

CarePlus does not direct marketing or advertising into Florida and does not solicit customers in Florida. The record reflects that CarePlus has no warehouses, offices, agents, or employees in Florida. Any suggestion that CarePlus attended conventions or conferences for the specific purpose of soliciting Florida residents is speculation.  Isolated sales and contacts alone do not equate to continuous and systematic contacts.  *See Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 F. App'x. 322, 337 (Fed. Cir. 2003); *Campbell Pet Co.*, 542 F.3d at 884.  Even when viewed in the aggregate, CarePlus' contacts with this forum do not establish the "minimum contacts" required to exercise jurisdiction.  In light of CarePlus' attenuated contacts with Florida, this Court also lacks jurisdiction over Michael Molina.

### b.  Jurisdiction over Clinical Formula Defendants

A defendant may be subject to a court's specific jurisdiction if the cause of action "arises out of" or "relates to" a defendant's contacts within the forum state even if those contacts are

"isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). A "substantial connection" with a forum arising out of a "single act can support jurisdiction." *Id.* at 475 n. 18. The inquiry ultimately "turns on a trio of criteria, generally designated as purposeful availment, relatedness, and reasonableness." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1024 (Fed. Cir. 2009).[4] A court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n. 18.

Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third party." *Burger King*, 471 U.S. at 475. In other words, doing business with a company that does business in a state is not the same as doing business in that state. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). "Relatedness is the divining rod that separates specific jurisdiction cases from general jurisdiction cases and ensures that the element of causation remains in the forefront of the due process investigation." *Ticketmaster New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994). The reasonableness of exercising jurisdiction is assessed by evaluating the following factors: "(1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in

---

[4] The Federal Circuit employs a three-prong test to determine whether a court may exercise specific jurisdiction over a defendant: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (explaining that "[t]he first two factors correspond with the 'minimum contacts' prong of the *Int'l Shoe Co. v. Washington*, 326 U.S. 316 (1945) analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis").

obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Inamed Corp.*, 249 F.3d at 1363 (citing *Asahi Metal Industry, Co.*, 480 U.S. at 113)).

The Amended Complaint asserts that this Court has specific jurisdiction over Clinical Formula because Clinical Formula "repeatedly contracted" with Vivant for the manufacture and supply of skincare products to Florida using Vivant's patented and trade secreted proprietary formulas. There is no question that Clinical Formula availed itself to the benefits of conducting business in Florida, that Vivant's cause of action is related to Clinical Formula's activities with Florida or that the exercise of jurisdiction would be fair and reasonable.  There is, however, a question as to whether this Court is the proper forum to adjudicate Vivant's patent claims alleged against Ken Kutanakit, and the Demingoys.

Section 1400(b) is the exclusive controlling statute for venue in patent infringement actions against individuals.  Under § 1400(b), venue is proper where (1) the defendant resides or (2) where the defendant has "committed acts of infringement *and* has a regular and established place of business."  28 U.S.C. § 1400(b) (emphasis added).  It is undisputed that neither Kutanakit nor the Demingoys "reside" in Florida.  Section 1400(b) cannot be given the "liberal" construction afforded to § 1391(c).  *Schnell v. Peter Echrich and Sons, Inc.*, 365 U.S. 260, 264 (1961).  Therefore, the "permanent and continuous presence" inquiry, which is applicable to corporate defendants, cannot be applied to an individual defendant.  *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).  Rather, a non-resident, non-corporate defendant "must be regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis

in a physical location within the district over which it exercises some measure of control." *Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449, 461 (S.D.N.Y. 2000).

As Clinical Formula's corporate manager and president, Kutanakit is alleged to have personally controlled Clinical Formula's conduct and actively participated in the patent infringement at issue. Kutanakit's "control, and active management" of Clinical Formula "provide[s] sufficient basis for finding that venue [i]s proper." *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F. 3d 1408, 1411 (Fed. Cir. 1996). Vivant claims that Erwin Demingoy is "responsible for mixing Vivant's products that incorporate Vivant's '110 Patent and trade secrets" and that Rowena Demingoy is "in charge of taking product orders" at Clinical Formula. The mixing of certain products in California and taking product orders in California, is not sufficient to confer personal jurisdiction or venue in the Southern District of Florida.

**B. Whether Venue is Proper Under 28 U.S.C. § 1391(b).**

Venue for trademark infringement claims is governed by the general venue statute, 28 U.S.C. § 1391(b).[5]   A trademark infringement claim may be properly brought in a judicial district where any defendant resides, if all defendants reside in the same state, or a judicial district where a substantial part of the events giving rise to the cause of action occurred. *Id.*   A "substantial part" of the events giving rise to a trademark claim occur in any district where customers are likely to be confused by the accused goods, "whether that occurs solely in one district or many." *Cottman Transmission Sys. v. Marino*, 36 F.3d 291, 295 (3d Cir. 1994). [6]

---

[5] "Because the Lanham Act has no special venue provision, the general venue statute applies." *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 n. 3 (D. Ariz., 2009).

[6] The Lanham Act, 15 U.S.C. §§1051-1127 provides two statutory causes of action for infringement of a trademark.  The first is for infringement of a registered trademark. *See id.* §1141(1).   The second is for infringement of an unregistered, common law trademark.  *See id.*

Here, Vivant need only show that a substantial number of customers of Vivant's products who reside in this district may be confused by CarePlus' use of the allegedly infringing mark. *See Skyes Lab, Inc. v. Kalvin*, 610 F. Supp. 849, 860 n. 8 (C.D. Cal. 1985) (observing that trademark infringement occurs in the district "where the passing off occurs, i.e., where the deceived consumer buys the defendant's product in the belief that he is buying the plaintiff's.").

The Defendants in this action reside in, or maintain their principal place of business in, the Central District of California. For venue purposes, the issue here is whether a substantial part of the events giving rise to Vivant's trademark claims occurred in this district. Similar to Vivant's patent infringement claims, the only evidence Vivant proffers to support an argument for the likelihood of trademark or brand confusion in the Southern District of Florida are two isolated sales of CarePlus products to Florida residents. The Internet printout of customer comments related to CarePlus products does not indicate whether the Florida resident purchased the product at issue in this case. The isolated sale to a Florida resident while attending a conference in Nevada does not create an issue of confusion in this district. This Court cannot reasonably conclude that a substantial part of the events giving rise to Vivant's claims occurred in this district. Accordingly, the Southern District of Florida is not the proper venue to adjudicate Vivant's trademark infringement claims.

## C. *Transfer to the United States District Court for the Central District of California*

Change of venue in intellectual property cases, like other civil cases, is governed by 28 U.S.C. § 1404(a). *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer

---

§1125(a)(1). Infringement of an unregistered, common law trademark is often referred to as "unfair competition" under the Lanham Act. *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1068 (C.D. Cal. 1999) (citing *Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 & 1047 n. 7 (9th Cir. 1998).

any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Section 1404(a) authorizes a court to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses and the public, and to conserve time, energy and money.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  "The plaintiff's choice of forum should not be disturbed unless it is *clearly outweighed* by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).  District courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice.  *See England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

Courts engage in a two-step analysis under 28 U.S.C. § 1404(a) to determine the propriety of transfer to another district.  First, courts determine whether the action could have been brought in the venue in which transfer is sought.  Second, courts assess whether convenience and the interest of justice require transfer to the requested forum.  *See Thermal Technologies, Inc.*, 282 F.Supp.2d 1373, 1376 (S.D. Fla. 2003); *Jewelmasters, Inc. v. May Dep't Stores*, 840 F. Supp. 893, 894-95 (S.D. Fla. 1993) (citing *Continental Grain co. v. the Barge FBL-585*, 364 U.S. 19 (1960)).  This case could have been filed in the Central District of California because all Defendants are subject to personal jurisdiction there and because a substantial part of the events giving rise to Plaintiffs' claims occurred there.  *See* 28 U.S.C. § 1391(a) (1), (2).

Section 1404(a)'s second step analyzes whether the Central District of California is the more appropriate venue in this case.  In making this determination, courts focus on a number of potential factors including: (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5)

the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005).

In the present case, all factors except Plaintiff's choice of venue support the transfer of this case to the Central District of California. After reviewing the filings on record, I find that most of the material evidence in this case, including party and non-party witnesses and documents, is predominantly located in the Central District of California, not the Southern District of Florida. The Clinical Formula Defendants and the CarePlus Defendants have several potentially-critical witnesses residing in the Central District of California. Furthermore, non-party witnesses, perhaps even more crucial to the fair resolution of this case, also reside in the Central District of California. The Southern District of Florida may lack subpoena power over those witnesses altogether, thus having the potential of losing key testimony. See Fed. R. Civ. P. 45(c)(3)(A). Moreover, the Central District of California houses the bulk of relevant documents bearing on the alleged intellectual property infringement activity.

Although venue may be proper for Vivant's state law claims, this Court does not have complete jurisdiction over Vivant's primary patent and trademark claims. The interests of judicial economy and avoidance of piecemeal litigation preclude this Court from exercising pendent venue over the entire proceeding. *Smith v. Gober,* 236 F.3d 1370, 1373 (Fed.Cir.2001) ("Where the facts underlying separate claims are "intimately connected," the interests of judicial economy and avoidance of piecemeal litigation require that the claims be adjudicated together).

13

In light of the totality of the circumstances, including the factors that support transfer, there is little doubt that this case should be litigated in the Central District of California.

CONCLUSION

The Southern District of Florida is not the proper forum to adjudicate Vivant's claims. All of the alleged intellectual property infringers are located in the Central District of California. To deny transfer to the district would contravene the interests of justice. For the reasons set forth above, it is **ORDERED and ADJUDGED** that the CarePlus Defendants' Motion to Transfer Venue (ECF No. 20) is **GRANTED**. This case is **DISMISSED** *without prejudice*. The Clerk shall take all necessary steps to **TRANSFER** this case to the Central District of California. All pending motions are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida this 31st day of March 2011.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of Record*